Shari L. Heyen (Texas Bar No. 09564750)
GREENBERG TRAURIG, LLP
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Email: HeyenS@gtlaw.com

*Counsel for MidCap Funding IV Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** <br><br> **EXAMINATION MANAGEMENT SERVICES, INC.,** <br><br> Debtor. | § § § § § § § § § | Chapter 7 <br><br> Case No. 20-32548-HDH-7 |
| **In re:** <br><br> **EMSI ACQUISITION, INC.,** <br><br> Debtor. | § § § § § § § § | Chapter 7 <br><br> Case No. 20-32549-MVL-7 |
| **In re:** <br><br> **EMSI HOLDCO, INC.,** <br><br> Debtor. | § § § § § § § § | Chapter 7 <br><br> Case No. 20-32550-SGJ-7 |
| **In re:** <br><br> **EMSI HOLDING COMPANY,** <br><br> Debtor. | § § § § § § § § | Chapter 7 <br><br> Case No. 20-32551-HDH-7 |

1

**AGREED MOTION OF MIDCAP FUNDING IV TRUST
FOR RELIEF FROM THE AUTOMATIC STAY**

> **PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**
>
> **ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, ROOM 1254, DALLAS, TX 75242 BEFORE CLOSE OF BUSINESS ON DECEMBER 1, 2020, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF.**
>
> **A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

MidCap Funding IV Trust (together with its affiliates, successors and assigns, collectively "MidCap"), as successor by assignment to MidCap Financial Trust, in its capacity as a secured creditor and party-in-interest in each of the above-captioned chapter 7 cases, and with the agreement of the Chapter 7 Trustee, files this *Motion for Relief From the Automatic Stay* (the "Motion"). This Motion requests entry of an order, in substantially the form attached hereto as **Exhibit A** (the "Proposed Order"), granting relief from the automatic stay to allow MidCap to exercise certain rights and remedies under the Loan Documents (as defined below), including, but not limited to, exercising control over and liquidating the Collateral (as defined below) and applying the net sales proceeds in satisfaction of its secured claim. In support of this Motion, MidCap respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).

2

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105 and 362(d).

## BACKGROUND

### A. The Loan Documents and MidCap's Secured Claims

4. Examination Management Services, Inc. ("EMSI"), EMSI Acquisition, Inc. ("EMSI Acquisition"), and EMSI Holding Company ("EMSI HC", and collectively with EMSI and EMSI Acquisition, the "Borrowing Debtors"), as borrowers, entered into that certain Credit and Security Agreement with MidCap Financial Trust dated as of April 26, 2019 (as amended from time to time, the "Credit and Security Agreement", a true and correct copy of which is attached hereto as **Composite Exhibit B** and incorporated herein by reference). The Credit and Security Agreement, together with all other agreements, documents, security agreements, notes, UCC-1 Financing Statements, and amendments are hereinafter collectively referred to as the "Loan Documents". Pursuant to the Loan Documents, MidCap Financial Trust agreed to provide the Borrowing Debtors with a revolving loan in an amount not to exceed $20,000,000 (the "Revolver") and a term loan in an original principal amount of $6,000,000 (the "Term Loan", and collectively with the Revolver, the "Loans"). The Loan Documents, and all rights thereunder, were immediately assigned by MidCap Financial Trust to MidCap.

5. Additionally, EMSI Holdco, Inc. ("EMSI Holdco", and collectively with the Borrowing Debtors, the "Debtors") entered into that certain Payment Guaranty dated as of April 26, 2019 to and for the benefit of MidCap Financial Trust (the "Guaranty", a true and correct copy of which is attached hereto as **Exhibit C** and incorporated herein by reference). Pursuant to the Guaranty, EMSI Holdco guaranteed the full and prompt payment of the Term Loan and all Enforcement Costs (as defined in the Guaranty) in connection therewith, provided that EMSI

Holdco's maximum liability for payment of principal is limited to the amount by which the amount of the Term Loan on the date of demand for payment exceeds $5,000,000.

6. To secure repayment of the Loans and the Borrowing Debtors' performance under the Loan Documents, the Borrowing Debtors granted a first priority security interest to MidCap Financial Trust in substantially all of the Borrowing Debtors' assets (collectively, and as defined and set forth in the Credit and Security Agreement, the "Collateral").

7. On April 26, 2019, MidCap Financial Trust filed UCC-1 Financing Statements with the Delaware Secretary of State (collectively, the "Delaware Financing Statements") with respect to all assets and personal property of EMSI Acquisition and EMSI HC. Additionally, on May 1, 2019, MidCap Financial Trust filed a UCC-1 Financing Statement with the Nevada Secretary of State (the "Nevada Financing Statement", and collectively with the Delaware Financing Statements, the "Financing Statements", true and correct copies of which are attached hereto as **Composite Exhibit D** and incorporated herein by reference) with respect to all assets and personal property of EMSI.

8. On April 30, 2019, EMSI, MidCap, and Wells Fargo Bank, National Association ("Wells Fargo") entered into three deposit account control agreements (the "DACAs") and a deposit account and sweep investment control agreement (the "Sweep DACA"). True and correct copies of the DACAs and Sweep DACA are attached hereto as **Composite Exhibit F** and incorporated herein by reference. Among other things, these DACAs and Sweep DACA provide MidCap exclusive control over certain collateral bank accounts at Wells Fargo.

9. Accordingly, based upon the Loan Documents, the UCC-1 Financing Statements, and the DACAs and Sweep DACA, MidCap has a properly perfected security interest in substantially all assets and personal property of the Borrowing Debtors.

10. On May 29, 2019, MidCap Financial Trust assigned the Delaware Financing Statements to MidCap, and on May 30, 2019, MidCap Financial Trust assigned the Nevada Financing Statement to MidCap (collectively, the "Amended Financing Statements", true and correct copies of which are attached hereto as **Composite Exhibit E** and incorporated herein by reference).

B. **Events of Default and Forbearance**

11. On February 26, 2020, the Debtors and MidCap entered into that certain Forbearance Agreement and Third Amendment to Credit and Security Agreement (the "Forbearance Agreement", a true and correct copy of which is attached as **Exhibit G** and incorporated herein by reference), pursuant to which MidCap agreed to forbear from exercising its rights and remedies due to certain Events of Default that had occurred under the Credit and Security Agreement, including, but not limited to, the Borrowing Debtors' failure to satisfy certain financial covenants.

12. On June 30, 2020, MidCap notified the Debtors that the forbearance period under the Forbearance Agreement ended in accordance with its terms and, as such, MidCap may exercise all rights and remedies under the Loan Documents. A true and correct copy of such notification is attached hereto as **Exhibit H** and incorporated herein by reference. Accordingly, as part of a cooperative arrangement with the Debtors to wind down operations, MidCap commenced liquidation of the Collateral in accordance with the terms of the Loan Documents, including collection of outstanding accounts receivable.

C. **The Bankruptcy Cases**

13. On October 6, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

14. As of the Petition Date, the outstanding principal balance (exclusive of accrued interest, fees, and reimbursable expenses) owed to MidCap under the Credit and Security Agreement and other Loan Documents exceeded $8,187,135, all of which is secured by the Collateral on a first-priority basis.

15. As of the Petition Date, the outstanding balance under the Loan Documents exceeded the value of the Collateral, and the Debtors therefore do not have any equity in the Collateral. Additionally, because the Debtors are liquidating, the Collateral is not necessary to an effective reorganization.

16. MidCap is holding in excess of $1,628,540 in accounts receivable that it has collected in the ordinary course of business, which is being held in escrow and has not yet been applied to reduce the outstanding balance under the Loan Documents. Further, additional funds in excess of $183,843 are currently held in the Debtors' accounts at Wells Fargo governed by the disabled Sweep DACA ("Wells Fargo Accounts") and such funds are not accessible by MidCap.

## RELIEF REQUESTED

17. MidCap requests entry of the Proposed Order granting relief from the automatic stay to allow MidCap to exercise its rights and remedies under the Loan Documents, including, but not limited to, (a) collecting, storing, inventorying, marketing, selling, and otherwise realizing upon the Collateral and applying the net sales proceeds to the outstanding balance due under the Loan Documents; (ii) authorizing MidCap to obtain the funds in the Wells Fargo Accounts, (iii) authorizing MidCap to work with the Wells Fargo Accounts to collect the proceeds of existing accounts receivable

18. collecting, storing, inventorying, marketing, selling, and otherwise realizing upon the Collateral and applying the net proceeds to the outstanding balance due under the Loan Documents, (b) obtain the funds held in the Wells Fargo Account, and (c) allow the Sweep DACA

6

to return to operation, permitting MidCap to utilize such account for receipt of future accounts receivable.

## BASIS FOR RELIEF

### A. Relief from the Automatic Stay is Warranted

19. Section 362 of the Bankruptcy Code "provides for an automatic but not permanent, stay against 'any act to obtain possession of property of the estate,'" and "any act to enforce any lien against property of the estate." *In re Mirant Corp.*, 440 F.3d 238, 251 (5th Cir. 2006); 11 U.S.C. § 362(a)(3), (4). Bankruptcy courts enjoy broad discretion in deciding whether to lift the automatic stay. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303 (5th Cir. 2005).

20. Courts "shall grant relief from the stay" under section 362(d) if the moving party satisfies one of two tests. *Id.* First, relief may be granted "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Second, relief may be granted with respect to property when "(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization[.]" 11 U.S.C. § 362(d)(2); *In re Fennell*, Case No. 17-20095-rlj13, 2017 Bankr. LEXIS 3901, at *7 (Bankr. N.D. Tex. Nov. 9, 2017). Here, relief is appropriate and warranted under both tests.

21. First, cause exists to grant relief from stay under section 362(d)(1), because MidCap is undersecured and is not adequately protected. Under section 362(d)(1), cause exists if the creditor is undersecured and the value of the collateral is declining. *See In re JCP Props., Ltd.*, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015) ("To establish a *prima facie* case of cause due to a lack of adequate protection, the creditor seeking relief must provide evidence that the value of the collateralized property is declining or is threatened to decline in value as a result of the automatic stay."). Here, MidCap's secured claims far exceed the value of the Collateral. Because of the imposition of the automatic stay, however, MidCap is unable to exercise its remedies against the

7

Collateral to preserve any remaining value in the Collateral. Accordingly, cause exists to grant relief from the automatic stay under section 362(d)(1).

22. For the same reasons, relief from stay is also appropriate and warranted under section 362(d)(2). It is undisputed that MidCap is undersecured. Additionally, the Collateral is not necessary to an effective reorganization, because this case is a liquidation under chapter 7 of the Bankruptcy Code. *See In re Young*, No. 06-80534-MI, at *9 (Bankr. S.D. Tex. Jan. 10, 2007) (granting relief from stay and finding that property was not necessary to an effective reorganization as a matter of law because "[t]his is a chapter 7 liquidating bankruptcy" and "is not a reorganization bankruptcy"). Therefore, relief from the automatic stay is also warranted under section 362(d)(2).

**B. Waiver of the 14-Day Stay under Bankruptcy Rule 4001(a)(3) is Appropriate**

23. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). Courts have waived the stay imposed by Bankruptcy Rule 4001(a)(3) so as not to "impede the enforcement and implementation" of relief from the automatic stay. *See, e.g., In re Huie*, No. 07-40627, 2007 WL 2317152, at *8 (Bankr. E.D. Tex. Aug. 8, 2007).

24. MidCap respectfully requests that the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) be waived so that MidCap may immediately proceed to collect, sell, and realize upon the Collateral without any further diminution in value of the Collateral. The Chapter 7 Trustee does not oppose waiver of the 14-day automatic stay.

## CONCLUSION

MidCap respectfully requests entry of the Proposed Order (i) granting relief from the automatic stay to allow MidCap to exercise its rights and remedies under the Loan Documents, including, but not limited to, collecting, storing, inventorying, marketing, selling, and otherwise

realizing upon the Collateral and applying the net sales proceeds to the outstanding balance due under the Loan Documents; (ii) authorizing MidCap to obtain the funds in the Wells Fargo Accounts, (iii) authorizing MidCap to work with the Wells Fargo Accounts to collect the proceeds of existing accounts receivable, and (iv) granting such other and further relief as the Court deems just and equitable.

Dated: November 17, 2020

**GREENBERG TRAURIG, LLP**

By: */s/ Shari L. Heyen*
Shari L. Heyen
Texas Bar No. 09564750
*HeyenS@gtlaw.com*
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

***Counsel for MidCap Funding IV Trust***

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules 4001-1(a) and 9014-1(d)(1), undersigned counsel hereby certifies that, on November 16, 2020, he conferred with the Chapter 7 Trustee via email, who stated that he agrees to the relief requested in the Motion.

/s/ *Matthew A. Petrie*
Matthew A. Petrie

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 17, 2020, true and correct copies of this document were served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas via electronic mail.

/s/ *Shari L. Heyen*
Shari L. Heyen